### LEAD POISONING A " PERSONAL INJURY."

Superior Court of Cincinnati.

LOUIS PLASKO v. THE AMERICAN CARRIAGE COMPANY.

Decided, January, 1914.

*Negligence—Employee Suffers From Lead Poisoning—Adequate Warning Required From Employer as to the Danger of Uncleanness—Personal Injuries Includes Occupational Diseases Under the Workmen's Compensation Act.*

1. Where an employee is put to work with white lead or other material, under circumstances where his health may be endangered through failure to exercise the most unremitting care in removing from his clothing, hair and skin the minute particles of poisonous dust which are found in the atmosphere where such material is used, the law will not permit the employer to rest secure under the assumption that such employee will take such precautions but requires him to give such employee adequate warning of the danger.

2. The expression "personal injuries," as used in the workmen's compensation act of this state, includes occupational diseases contracted in the course of employment.

*Murray Seasongood* and *R. S. Marx*, for plaintiff.
*Philip & S. C Roettinger*, contra.

PUGH, J.

The testimony in this case shows very clearly that the plaintiff, Louis Plasko, while in the employment of the defendant, the American Carriage Company, contracted the disease known as plumbism or lead-poisoning.

The plaintiff claimed that he contracted this disease through failure on his employer's part to give him proper warning and instruction as to keeping himself clean under the circumstances, and through failure to furnish him certain protective devices and a safe place in which to carry on his work. While the jury has found generally in favor of the plaintiff, there is reason to believe that the verdict is based principally, if not solely, upon testimony which showed, without contradiction, that no warning,

advice or instruction whatever was given the plaintiff when he was put to work with paint which contained white lead.

It is true, as claimed by the defendant, that it was not engaged in the manufacture of white lead, but was a carriage maker; also, that white lead, so far as the plaintiff was concerned, was used in its business only as an ingredient of the paint used on carriage wheels, and then only in small quantity; also that the plaintiff was only required to handle this paint occasionally, and in the ordinary course of his employment did not come in contact with it; also that the workmen were provided with water, towels, and a substitute for brushes, and had thus means of keeping themselves clean, at least to a certain extent, and also that no case of lead poisoning ever before occurred in this factory.

On the other hand, it is equally true that the defendant company furnished its workmen for use in their employment with a paint which was compounded upon the premises and contained white lead; also that the plaintiff contracted plumbism from handling this paint in the course of the work he was directed to do by his foreman; and that he was not warned of any danger connected with the work.

It was claimed by the defendant that the plaintiff represented he was experienced in handling paint of this kind, and had done this sort of work before, and that therefore it was not necessary to warn him of danger connected with the use of white lead paint. But the plaintiff denied all this. This issue was submitted to the jury, under an explicit instruction to the effect that if the plaintiff made the representations claimed, the defendant was thereby relieved of the duty, otherwise imposed upon it by the law, of giving him warning as to danger connected with the employment, and that the plaintiff, in such event, could not recover for any failure of the defendant in this respect. In this connection, the jury was also instructed the burden of proof was on the plaintiff to show that the white lead was used under such circumstances and in such quantity as to make the work dangerous; otherwise the plaintiff's claim in this respect failed.

It is, argued, with much stress, that there is no duty imposed upon an employer to warn his employee to keep himself clean, and that an employer should not be held responsible for want of cleanliness on the part of his workmen. Generally speaking this may be so, but where an employee is put to work with white lead or any other material, under circumstances where his health may be endangered through failure to exercise the most unremitting care in removing from his clothes, his hair and skin, and his whole person the minute particles of white lead dust that get into the atmosphere in which he works, and in scrubbing and washing out, every time he puts food or drink into his mouth, the extremely small bits of white lead that get under his finger-nails, the law will not permit the employer to rest secure under the assumption that the uninstructed employee will take these precautions. Under such circumstances, failure to warn an inexperienced workman of the risk is a neglect of duty for the consequences of which an employer must answer in damages.

Every point presented during the trial and during argument was dealt with in the charge to the jury, and the law bearing on the subject was explained at some length. There is no reason to suspect any prejudice, bias or sympathy on the part of the jury which returned the verdict and the court is not disposed to disturb the finding of the jury on the ground that it is against the weight of the evidence.

The defendant called witnesses to show that lead poisoning was unknown, or almost so, among carriage-makers, and that the business was not unsafe in respect of this disease. These witnesses were called as experts. Most, if not all of them, knew nothing whatever about this particular case. They were cross-examined as experts, and for the purpose of determining what they knew on the subject and how much study and attention they had given it, were asked a number of questions as to what they knew of certain governmental and other publications and certain legislation on the subject of plumbism as an occupational disease. Inasmuch as the questions were designed only to ascertain what these witnesses knew, and what study they had made of the subject concerning whch they were called to advise

the court and jury, it was entirely immaterial whether the publications and legislation about which they were asked were issued and enacted before this action was brought or after. It is not true, as seems to be claimed, that such publications and subsequent legislation was introduced in evidence. The court is unable to see that any error prejudicial to the defendant was committed at trial in this respect.

Since the trial of this suit, the attention of the court has been called to what purports, and is no doubt a ruling of the State Employers' Liability Board wherein it is held that lead-poisoning, or indeed, any occupational disease is not a "personal injury" within the meaning of the workmen's compensation act. If this ruling is to be accepted as law, a new trial must be granted in this case, since the workmen's compensation act, with the increased liability it imposes on employers, was applied by the court in its charge to the jury for the purpose of determining the verdict.

*Prima facie,* the expression "personal injury," employed as it is in the statute without qualification, includes injury to health as well as such injuries as are caused by accident. In law, the term "personal injury" is used to differentiate injury to the human body from injury to property.

As a matter of fact, occupational diseases, such as lead-poisoning, anthrax, phosphorous poisoning and the like, are usually much more injurious to the sufferer than the pains, deformities and mutilations caused by accident. Every reason that lies at the foundation of a law protecting a workman from the consequences of accidents applies in most cases with double force in cases of occupational diseases. To limit the workmen's compensation act to cases where injuries result from accident requires that the word "accident" or "accidental" be read into the statute, and, under the usual rule of statutory construction, strong evidence of legislative intent to that effect should appear.

The ruling in question is based, in part, on certain decisions under the English workmen's compensation law; *Steel* v. *Camell, Laird & Co., Ltd.,* 7 W. C. C., 9, (1905), 2 K. B., 232; and *Fenton* v. *Thorley & Co.,* 5 W. C. C., 1, (1903), A. C., 443.

The first comment to be made in reference to these decisions is that they apply to a statute which is materially different in the terms used in describing its purpose and object from the Ohio act.   The.English statute construed in these cases includes only such injuries as are accidental.   The language of the statute is:

"Personal injury by accident arising out of and in the course of the employment."

This of itself is enough to cause an Ohio court to hesitate in applying a construction of the English courts to the Ohio workmen's compensation act, and where it is added by way of further comment that the House of Lords in *Brintons, Ltd.,* v. *Turvey,* (1905), A. C., 230, has held that anthrax contracted by a workman employed in sorting wool is an accidental injury, it is difficult to comprehend how the particular cases cited are of any weight as precedents.   Anthrax is a disease caused by a germ or bacillus which, in the case cited, got into the eye of the sufferer and brought on an illness.   Lead-poisoning is a disease caused by minute particles of white lead getting into the system and bringing on an illness.   To say, under these circumstances, that anthrax is an injury arising from accident, while lead-poisoning is an injury arising from disease and not from accident, appears to the court to be a distinction too subtle for practical application.

The opinion of the Ohio board is based, also in part, upon the fact that, at the session of the General Assembly which enacted the workmen's compensation law which we are now considering, the Legislature provided, by statute, for an investigation and study of occupational diseases, obviously for the purpose of collecting data upon which to base legislation for the protection of workmen engaged in dangerous occupations, and probably for their compensation if disease were contracted.   The enactment of this legislation does not suggest to the court that the Legislature recognized thereby that the existing workmen's compensation act did not cover occupational diseases.   It seems more likely, under the circumstances, that it felt that further legislation on the subject might be desirable or necessary, and that,

possibly, something other than compensation in the form of a sum of money, might or should be provided for the sufferers.

The further objection that it is difficult or impossible to assign any particular date when any particular sufferer from an occupational disease contracted the same, does not appeal with much force to courts which have to pass upon similar questions not infrequently in cases of life and health insurance. Take the case at bar for an example: the testimony shows that, when he went to work for the defendant company, the plaintiff was in good health; that, in the course of his employment he handled paint compounded in part of white lead, and that in five months after he began work, he developed the characteristic symptoms of lead-poisoning.

It is with much hesitation and only after prolonged consideration that the court ventures to disagree with a finding of the state board on a subject with which it is much more conversant than the ordinary judge or lawyer. But each court must meet its own responsibilities as best it may, and when not controlled by a superior tribunal, must follow its own convictions. The considerations herein stated have led this court to the belief that the expression, ''personal injuries'' contained in the workmen's compensation act of this state includes occupational diseases contracted in the course of the employment, as well as those other injuries which, more strictly speaking, are described as ''accidental.''

For the reasons herein stated, the motion for a new trial will be overruled.